## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| **FRANCOIS MARTELET,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO.  09-cv-2925-JD** |
| | : | |
| **AVAX TECHNOLOGIES, INC.; JOHN** | : | |
| **K.A. PRENDERGAST; EDSON D. DE** | : | |
| **CASTRO; ANDREW W. DAHL; and** | : | |
| **CARL SPANA,** | : | |
| | : | |
| **Defendants.** | : | |

_____

**DuBOIS, J.**                                                                    **May 2, 2012**

## M E M O R A N D U M

### I. INTRODUCTION

This case arises out of an employment contract between plaintiff Francois Martelet and his former employer AVAX Technologies, Inc. ("AVAX"). After AVAX terminated plaintiff from his position as CEO, plaintiff filed suit against AVAX and members of its Board of Directors—John K.A. Prendergast, Edson D. De Castro, Andrew W. Dahl, and Carl Spana—alleging breach of contract, violations of the New Jersey Wage Payment Law, detrimental reliance, and unjust enrichment. AVAX asserted counterclaims against plaintiff for breach of contract, detrimental reliance, and breach of fiduciary duty based on plaintiff's alleged misdeeds during his tenure as CEO.

Plaintiff filed a Motion for Partial Summary Judgment on May 17, 2011, ("plaintiff's First Motion for Summary Judgment") seeking summary judgment as to his claim for back pay. The parties thereafter engaged in settlement discussions, which were unsuccessful. On December

9, 2011, plaintiff filed a Motion for Summary Judgment to Dismiss Counterclaims of Counter-Plaintiff, AVAX Technologies, Inc. ("plaintiff's Second Motion for Summary Judgment"). That same day, defendants filed a Motion for Summary Judgment seeking judgment in their favor on all of plaintiff's claims. For the reasons stated below, the Court grants in part and denies in part plaintiff's First Motion for Summary Judgment, grants plaintiff's Second Motion for Summary Judgment, and denies defendants' Motion for Summary Judgment.

## II. BACKGROUND

### A. The Employment Contract

In late 2007, plaintiff, a New Jersey resident, and defendants began negotiating an employment contract under which plaintiff would serve as the CEO of AVAX, a biotechnology company with a principal place of business in Philadelphia, Pennsylvania. (Statement Material Facts Supp. Pl.'s Mot. Partial Summ. J. ("Pl.'s First SOF") ¶¶ 1, 6.) On December 1, 2007, plaintiff and AVAX entered into an Employment Agreement. (Id. ¶ 11; Employment Agreement, Pl.'s First Mot. Summ. J. Ex. E.)  The Employment Agreement provided as follows:

1. Plaintiff was hired as President and CEO of AVAX. (Employment Agreement, Pl.'s First Mot. Summ. J. Ex. E, ¶ 2.1.)

2. Plaintiff could serve on AVAX's Board of Directors but would not receive an additional fee for doing so. (Id. ¶ 2.2.)

3. Plaintiff's annual base salary was $450,000. (Id. ¶ 3.1.)

4. Plaintiff was

> entitled to participate in the Company's annual discretionary bonus program, which shall have a target range of up to 50% of [plaintiff's] Base Salary based on milestones to be mutually agreed on between the Compensation Committee and [plaintiff] and prior to the beginning of each bonus period. For the first year of the

Employment Period, [plaintiff] shall receive a minimum bonus of 30% of the Employee's base salary, which bonus shall be paid no later than thirty (30) days after the first anniversary date of the employment period. After the first year of the Employment Period, [plaintiff] shall not be entitled to a minimum bonus amount. (<u>Id.</u> ¶ 3.2.)

5.  Plaintiff's employment could be terminated in one of six ways:

   a.  The expiration of the term of the Employment Agreement, which was to occur on December 1, 2010, (<u>id.</u> ¶ 4.1);

   b.  At the election of AVAX, for "Cause," immediately upon written notice by AVAX to plaintiff, (<u>id.</u> ¶ 4.2);

   c.  Upon the death or disability of plaintiff, (<u>id.</u> ¶ 4.3);

   d.  At the election of plaintiff for "Good Reason," upon written notice of not less than sixty days, (<u>id.</u> ¶ 4.4);

   e.  Following a change in control, (<u>id.</u> ¶ 4.5); or

   f.  "At the election of either party, upon written notice of termination," (<u>id.</u> ¶ 4.6).

6.  If plaintiff terminated his own employment for "Good Reason," or if AVAX terminated plaintiff's employment without "Cause," plaintiff would be entitled to severance payments consisting of twenty months' salary and benefits. (<u>Id.</u> ¶¶ 5.2(b), 5.3.)

7.  If AVAX terminated plaintiff's employment for "Cause," or if plaintiff terminated his own employment without "Good Reason," plaintiff would be entitled to receive only his unpaid salary and accrued vacation. (<u>Id.</u> ¶¶ 5.2(a), (c).)

8.  "Cause" was defined as, <u>inter alia</u>:

   (i) [plaintiff's] material breach of, or habitual neglect or failure to perform the material duties which he is required to perform under, the terms of this Agreement; (ii) [plaintiff's] willful and intentional failure to follow the reasonable directives or policies established

by or at the direction of the Board; or (iii) [plaintiff's] engaging in conduct that is materially detrimental to the interests of [AVAX] such that [AVAX] sustains a material loss or injury as a result thereof, provided that the breach or failure of performance by [plaintiff] under subparagraphs (i) through (iii) hereof is not cured, to the extent cure is possible, within thirty (30) days of the delivery to [plaintiff] of written notice thereof. (Id. ¶ 6.1(a).)

9. "Good Reason" was defined as, inter alia,

the occurrence of any of the following circumstances, and [AVAX's] failure to cure such circumstances within thirty (30) days of the delivery to [AVAX] of written notice by the Employee of such circumstances:
(a) any material adverse change in [plaintiff's] duties, authority or responsibilities . . . which causes [plaintiff's] position with [AVAX] to become of significantly less responsibility or assignment of duties, responsibilities or title inconsistent with [plaintiff's] position; [or]
(b) a reduction in [plaintiff's] salary . . . except if such reduction affects all executive officers similarly. (Id. ¶ 6.5.)

10. The Employment Agreement constituted "the entire agreement between the parties and supersede[d] all prior agreements and understandings." (Id. ¶ 10.)

11. The Employment Agreement was governed by New Jersey law. (Id. ¶ 12.)

12. The titles and captions of the paragraphs of the Employment Agreement were "for convenience of reference only" and did not alter the terms thereof. (Id. ¶ 15.1.)

**B. Suspension of Manufacturing at French Subsidiary**

AVAX controlled a French company, Genopoietic, which manufactured cancer vaccines. (See Deposition of Henry Schea ("Schea Dep."), Defs.' Resp. Pl.'s Second Mot. Summ. J. Ex. F, at 77.) In the spring of 2009, plaintiff undertook a series of steps that had the effect of ending vaccine manufacturing at Genopoeitic. (See generally Statement Material Facts Supp. Pl.'s Second Mot. Summ. J. ("Pl.'s Second SOF") ¶¶ 6–12.) The parties dispute whether those steps

were taken unilaterally and whether French law obligated plaintiff to take these steps.

Regardless, by May 2009, Genopoietic was no longer making cancer vaccines for AVAX. (Id.)

### C. Cash Shortages and Plaintiff's Termination

Beginning in late 2008, AVAX began experiencing cash shortages, making it difficult to

meet payroll obligations. (Pl.'s First SOF ¶ 25.) In April 2009, plaintiff, along with some other

members of the AVAX management team, stopped receiving an annual salary. (Pl.'s First SOF

¶ 27; Dep. Andrew Dahl ("Dahl Dep."), Defs.' Mot. Summ. J. Ex. C, at 29.) The parties dispute

who was primarily responsible for making the decision to suspend salaries, but it is clear that,

even if plaintiff had made the decision to do so, "he would have consulted the [B]oard in relation

to that." (Dep. John Prendergast ("Prendergast Dep."), Pl.'s First Mot. Summ. J. Ex. B, at 107.)

Further, plaintiff never received any bonus for 2008. (Pl.'s First SOF ¶ 26[1]; Aff. Pl. Francois

Martelet, Pl.'s Second Mot. Summ. J. Ex. C ("Martelet Aff.") ¶ 34.)

On May 14, 2009, plaintiff's counsel sent AVAX a letter stating,

> This letter shall serve as Dr. Martelet's written notice to AVAX,
> pursuant to paragraph 6.6 ("Good Reason") of the Employment
> Agreement . . . of several circumstances constituting a breach of
> that Agreement. Per paragraph 6.5, AVAX has thirty (30) days
> from the date of this notice to cure the breaches identified herein.
> In the event these breaches are not cured within that time frame,
> Dr. Martelet shall be entitled to exercise his rights under paragraph
> 5.3 ("Termination By Employee Election For Good Reason") of
> the Agreement.

(Letter from Robin Bond, Esq., to Faith Charles, Esq., & AVAX Technologies, Inc., Pl.'s First

Mot. Summ. J. Ex. G.) The May 14, 2009, letter listed three alleged breaches of the Employment

---

[1] Although defendants "[c]ontested" this point in plaintiff First Statement of Facts, they
did so on the ground that the bonus was not guaranteed. There is no dispute that plaintiff did not
receive a bonus for 2008.

Agreement by AVAX: (1) failure to pay unpaid wages, (2) failure to pay directors' and officers' liability insurance and health care insurance, and (3) failure to pay plaintiff's first-year bonus, which plaintiff argues is a mandatory thirty percent bonus. (Id.) Defendants made no attempt to cure the alleged breaches. (Dep. Carl Spana ("Spana Dep."), Pl.'s First Mot. Summ. J. Ex. C, at 40–41, 64.) Plaintiff sent similar letters and/or emails on May 20, 2009,[2] May 28, 2009, and June 10, 2009. (Pl.'s First Mot. Summ. J. Exs. H–J.) None of plaintiff's letters stated that he was actually exercising his right to terminate for "Good Reason" under the Employment Agreement. (Id.)

Defendants did not respond to any of these letters until June 16, 2009, when the AVAX Board of Directors, through Prendergast, sent plaintiff a letter "pursuant to [the] Employment Agreement . . . to terminate [plaintiff's] employment for Cause." (Letter from AVAX to Francois Martelet, Pl.'s Second Mot. Summ. J. Ex. F.) The letter stated that plaintiff had "failed to discharge [his] duties [as CEO] and indeed, ha[d] engaged in a course of conduct materially detrimental to AVAX." (Id.) According to the letter, plaintiff's termination took effect on June 17, 2009. (Id.)

## III. LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and

---

[2] Plaintiff has averred that he sent an email requesting his back pay and 2008 bonus on May 20, 2009. (Martelet Aff. ¶ 22.) However, the May 20, 2009, email plaintiff submitted with his First Motion for Summary Judgment does not mention his wages or bonus. (Email from Francois Martelet to John Prendergast, Edson De Castro, Carl Spana, and Andrew Dahl, Pl.'s First Mot. Summ. J. Ex. H.) Regardless, the precise wording of the May 20, 2009, email is not relevant to the issues presently before the Court because plaintiff could not have terminated his employment until at least thirty days after his initial letter of May 14, 2009, requesting cure. (Employment Agreement ¶ 6.5.)

resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).  The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  After examining the evidence of record, a court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law" and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

Plaintiff claims that AVAX breached the Employment Agreement by failing to pay him his 2008 bonus and his wages and benefits from April 1, 2009 (when he stopped receiving his salary), to June 17, 2009 (when he was terminated). Further, plaintiff claims that he is entitled to severance payments because he either resigned for "Good Reason" or was terminated without "Cause." Defendants disagree and allege that plaintiff breached the Employment Agreement by taking actions that harmed AVAX during his tenure as CEO.

The parties' motions present a number of issues. First, plaintiff asks the Court to grant plaintiff's First Motion for Summary Judgment on his entitlement to unpaid wages and benefits, the 2008 bonus, and prejudgment interest. Plaintiff argues that AVAX is liable for these claims

7

under a breach-of-contract theory and that the individual defendants, as AVAX's officers and members of the Board of Directors, are personally liable under the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1 et seq.

Second, plaintiff asks the Court to grant plaintiff's Second Motion for Summary Judgment on all of the AVAX counterclaims. This motion is based in large part on the argument that defendants have failed to produce evidence of non-speculative damages.

Third, defendants ask the Court to grant their Motion for Summary Judgment on all of plaintiff's claims under the NJWPL. They argue that plaintiff, as a director and officer of AVAX, is not entitled to the protection of the NJWPL and, in the alternative, that the NJWPL does not cover the 2008 bonus. Defendants' Motion for Summary Judgment also argues that AVAX was not obligated to pay plaintiff a bonus for 2008 and that AVAX terminated plaintiff for "Cause," entitling defendants to judgment in their favor on plaintiff's breach-of-contract claim. Finally, defendants ask the Court to dismiss plaintiff's detrimental-reliance and unjust-enrichment claims.

### A. Choice of Law

#### 1. Breach-of-Contract Claims

"It is well established that a district court in a diversity action will apply the choice of law rules of the forum state in determining which state's law will be applied to the substantive issues before it." Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988). "'Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them.'" Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007) (quoting Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994)). A "choice-of-law provision[] will be enforced 'unless either (a) the chosen state has no substantial relationship to

the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue.'" Id. (quoting Kruzits, 40 F.3d at 55).

In this case, the Employment Agreement states, "This Agreement shall be construed, interpreted and enforced in accordance with the laws of New Jersey." (Employment Agreement § 12.) Defendants argue that New Jersey has "no substantial relationship to the parties or the transaction," Gay, 511 F.3d at 389, and thus, under Gay, the Court should apply Pennsylvania law. The Court rejects defendants' argument. Plaintiff is domiciled in New Jersey; thus, New Jersey does have a "substantial relationship to the parties." Id.

Accordingly, the Court concludes that New Jersey law governs plaintiff's breach-of-contract claim.

### 2. Claim Under the NJWPL

Defendants argue that the NJWPL does not apply because Pennsylvania law governs the Employment Agreement. The Court rejects this argument for two reasons. First, as stated above, New Jersey, not Pennsylvania, law governs the Employment Agreement. Second, and more fundamentally, the law governing the Employment Agreement does not necessarily determine whether the NJWPL applies because a claim under the NJWPL is not a claim for breach of contract. See Meyers v. Heffernan, 740 F. Supp. 2d 637, 651–53 (D. Del. 2010) (applying NJWPL and distinguishing breach-of-contract cases).

New Jersey courts have applied the NJWPL in situations closely analogous to that presented in this case where an employee lives in New Jersey but the employer is located in another state. In doing so, the Superior Court of New Jersey in Mulford v. Computer Leasing,

9

Inc., cited "the strong public and statutory policy of [New Jersey] in favor of protecting payment of employees' duly earned compensation," which, it concluded, "dicate[d] the application of New Jersey law." 759 A.2d 887, 891 (N.J. Super. Ct. Law Div. 1999). Given New Jersey's strong interest in protecting its residents—including plaintiff—and the Employment Agreement's connection to New Jersey, the Court concludes that the NJWPL applies to this case. See also Sternadori v. SVS Healthcare Mktg., Inc., No. 05-3679, 2007 WL 710298, at *3, 5–6 (E.D. Pa. Mar. 6, 2007) (applying NJWPL where employment contract was governed by New Jersey law).

### 3. Other Claims

The parties agree that Pennsylvania law governs both parties' detrimental-reliance claims and plaintiff's unjust-enrichment claim. Thus, the Court will apply Pennsylvania law to those claims.

## B. Unpaid Wages and Benefits

### 1. Claim Against AVAX

Plaintiff claims that AVAX breached the Employment Agreement when it failed to pay to him his salary and benefits from April 1, 2009, until June 17, 2009. Defendants make two arguments as to why he is not entitled to salary and benefits for those two-and-a-half months. First, they assert that AVAX stopped paying salaries to senior management because the company ran out of money, which was directly attributable to plaintiff's failure as CEO to secure financing for the company. (See Dep. Francois Martelet ("Martelet Dep."), Defs.' Resp. Pl.'s First Mot. Summ. J. Ex. A, at 36–37 (explaining that plaintiff's primary responsibility was to "raise[] money")).

This argument lacks merit. Under the Employment Agreement, plaintiff was to receive salary and benefits twice per month. Plaintiff's salary and benefits were not contingent on performance goals; rather, the Employment Agreement contained other provisions for incentive payments. (See Employment Agreement §§ 3.2–3.4.) If AVAX believed that plaintiff was not performing his job adequately, the Employment Agreement provided it with recourse: termination for "Cause." The Employment Agreement did not allow AVAX to withhold plaintiff's salary because he failed to secure adequate financing for AVAX.

Defendants' second contention is that plaintiff himself decided to suspend pay for senior management. Thus, defendants argue, plaintiff cannot now complain about a policy that he instituted.

This argument also lacks merit. There is no evidence that plaintiff agreed to forego payment of his salary permanently beginning in April 2009. Rather, it is undisputed that other senior managers whose pay was suspended were expected to receive their unpaid wages and benefits eventually. (Dahl Dep., Pl.'s Second Mot. Summ. J. Ex. D, at 29–30, 87–90; Prendergast Dep., Pl.'s Second Mot. Summ. J. Ex H, at 272.) Even Dahl, a named defendant and member of the Board of Directors, stated, "[T]he company has no argument with [plaintiff] regarding unpaid wages and that that is [sic] due and owing to him." (Dahl Dep., Defs.' Mot. Summ. J. Ex. C, at 90.)

For the above-stated reasons, the Court grants plaintiff's First Motion for Summary Judgment on the issue of plaintiff's entitlement to unpaid salary and benefits for the period from April 1, 2009, to June 17, 2009. A jury is required to determine the amount of the salary and benefits owed to plaintiff.

**2. Claim Against the Individual Defendants**

Plaintiff makes claims against the individual defendants for his unpaid wages and benefits under the NJWPL, N.J Stat. Ann. § 34:11-4.1 et seq. Under the NJWPL,

> [w]henever an employer discharges an employee, or . . . whenever an employee quits, resigns, or leaves employment for any reason, the employer shall pay the employee all wages due not later than the regular payday for the pay period during which the employee's termination, suspension or cessation of employment (whether temporary or permanent) took place.

Id. § 34:11-4.3. Although "the New Jersey Supreme Court has not explicitly found a private right of action under the New Jersey Wage Payment Law[,] courts have adjudicated civil suits brought by employees against their employers and managing officers for wages not paid as defined in said law." Sternadori v. SCS Healthcare Mktg., Inc., No. 05-3679, 2007 WL 710298, at *6 (E.D. Pa. Mar. 6, 2007) (citing Mulford, 759 A.2d at 891).

The NJWPL defines an "employee" as "any person suffered or permitted to work by an employer, except that independent contractors and subcontractors shall not be considered employees." N.J. Stat. Ann. § 34:11-4.1. Thus, plaintiff is an employee for the purposes of the NJWPL. Further, the NJWPL defines an "employer" as "any individual, partnership, [or] association . . . employing any person in this State." Id. The definition of "employer" includes "the officers of a corporation and any agents having the management of such corporation." Id. The New Jersey Superior Court has interpreted this language to include any director of a corporation, even one who does not actively manage the corporation. See Mulford, 759 A.2d at 893 ("[A]ll directors are responsible for managing the business and affairs of the corporation. A director cannot protect himself from performance of his legally imposed duties behind a paper

12

shield bearing the motto 'dummy director'. Directors may owe a duty to employees, as far as payment of their owed compensation is concerned.").

The parties agree that all of the individual defendants "were officers and members of the Board of Directors of AVAX with authority to act on its behalf." (Pl.'s First SOF ¶¶ 2–3.) Thus, the Court concludes that the individual defendants are jointly and severally liable, see Meyers, 740 F. Supp. 2d at 650, for plaintiff's unpaid wages and benefits under the NJWPL. However, such liability is secondary to that of AVAX, such that the individual defendants' "personal liability only comes into play to the extent [AVAX] does not pay its judgment." Mulford, 759 A.2d at 894.[3]

**C. 2008 Bonus**

**1. Claim Against AVAX**

Plaintiff argues that paragraph 3.2 of the Employment Agreement guaranteed him a bonus of at least thirty percent of his annual salary in 2008. That paragraph states in full:

> **Discretionary Performance Bonus**. Employee shall be entitled to participate in the Company's annual discretionary bonus program, which shall have a target range of up to 50% of Employee's Base Salary based on milestones to be mutually agreed on between the Compensation Committee and the Employee and prior to the beginning of each bonus period. For the first year of the Employment Period, Employee shall receive a minimum bonus of 30% of the Employee's base salary, which bonus shall be paid no later than thirty (30) days after the first anniversary date of the employment period. After the first year of the Employment Period, the Employee shall not be entitled to a minimum bonus amount.

---

[3] Defendants argue that the NJWPL does not apply because plaintiff was himself a director and officer of AVAX. Although creative, defendants' argument fails to cite any authority for the proposition that the NJWPL does not protect the wages of an officer or director. To the contrary, the definition of "employee" in the NJWPL is sufficiently broad to include officers and directors. N.J. Stat. Ann. § 34:11-4.1.

Plaintiff argues that the clause reading, "[f]or the first year of the Employment Period, Employee shall receive a minimum bonus of 30% of the Employee's base salary," entitles him to thirty percent of his base salary. That bonus, he contends, was due on December 30, 2008, thirty days after the anniversary of the execution of the Employment Agreement. Plaintiff did not receive a bonus for 2008. Plaintiff now moves for summary judgment on this issue

Defendants also moved for summary judgment on this issue, arguing that this clause, when read in the context of the entire paragraph, only provides that if plaintiff was awarded a bonus for 2008, such bonus would be at least thirty percent of his annual salary. Thus, they argue, plaintiff's 2008 bonus was not guaranteed, and he is not entitled to any bonus for 2008.

"The construction of a written agreement is ordinarily a matter for the court and should not be left to the jury unless the meaning is uncertain or ambiguous and depends upon parol evidence admitted in aid of interpretation." Trucking Emp. of N.J. Welfare Fund, Inc. v. Vrablick, 425 A.2d 1068, 1071 (N.J. Super. Ct. App. Div. 1980), cited in First Jersey Nat'l Bank v. Dome Petl'm Ltd., 723 F.2d 335, 339 (3d Cir. 1983); see also Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 224 (3d Cir. 1983); Michaels v. Brookchester, Inc., 140 A.2d 199, 204 (N.J. 1958) ("Ordinarily the construction of a written agreement is a matter for the court, but where its meaning is uncertain or ambiguous and depends upon parol evidence admitted in aid of interpretation, the meaning of the doubtful provisions should be left to the jury."). "The polestar of contractual interpretation is the intent of the parties. The starting point in ascertaining that intent is the language of the contract." Commc'ns Workers of Am., Local 1087 v. Monmouth Cnty. Bd. of Soc. Servs., 476 A.2d 777, 781–82 (N.J. 1984) (citations omitted).

In this case, the Court concludes that paragraph 3.2 of the Employment Agreement is ambiguous. The contractual language could support both parties' interpretation, especially when

paragraph 3.2 is read as a whole. Further, paragraph 15.1, which states, "The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the scope or substance of any section of this Agreement," undercuts defendants' argument that the bonus is clearly discretionary because the title of paragraph 3.2 is "Discretionary Bonus Program." Thus, there is a genuine dispute of material fact as to whether paragraph 3.2 of the Employment Agreement entitled plaintiff to a guaranteed bonus of thirty percent of his 2008 salary. In making that determination, the jury may consider parol evidence to aid its interpretation. See Michaels, 140 A.2d at 204.

### 2. Claim Against the Individual Defendants

The individual defendants argue that the NJWPL does not apply to bonuses, and thus, even if they are liable for unpaid wages and benefits under the NJWPL, they are not liable for the 2008 bonus. The NJWPL states that "wages" "exclude[es] any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J. Stat. Ann. § 34:11-4.1. Courts have therefore held that "'wages' are payments promised in advance of the services performed and paid promptly . . . after services are rendered." Finkler v. Elsinore Shore Assocs., 725 F. Supp. 828, 832 (D.N.J. 1989); see also Moran v. DaVita, Inc., No. 06-5620, 2009 WL 792074, at *18 (D.N.J. Mar. 23, 2009), aff'd in part, vacated in part by Moran v. DaVita Inc., 441 F. App'x 942 (3d Cir. 2011).

Although no court in New Jersey has addressed the issue of a "guaranteed bonus," the amount of which is determined at the outset of employment, the Court concludes that such a bonus would constitute "wages" because it would be a "payment[] promised in advance of the services performed and paid promptly." Finkler, 725 F. Supp. at 832. If the 2008 bonus was guaranteed, it would be promised in exchange for plaintiff's having worked a full year for

AVAX, and it would be paid promptly upon his completion of that term. Thus, if the jury

concludes that paragraph 3.2 of the Employment Agreement entitles plaintiff to a guaranteed

bonus, the individual defendants will be jointly and severally liable for the amount of the bonus,

Meyers, 740 F. Supp. 2d at 650, although such liability would be secondary to that of AVAX,

Mulford, 759 A.2d at 894.

### D. Prejudgment Interest

Plaintiff argues that he is entitled to prejudgment interest on his unpaid wages and

benefits from April 1, 2009, to June 17, 2009, and his 2008 bonus. "[T]he award of prejudgment

interest on contract and equitable claims is based on equitable principles." Cnty. of Essex v. First

Union Nat. Bank, 891 A.2d 600, 608–09 (N.J. 2006). "'The basic consideration is that the

defendant has had the use, and the plaintiff has not, of the amount in question; and the interest

factor simply covers the value of the sum awarded for the prejudgment period during which the

defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.'"

Id. (quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 323 A.2d 495, 506 (N.J. 1974)).

Whether to award prejudgment interest is a matter of discretion for the Court. Id. (citing In re

Estate of Lash, 776 A.2d 765, 773–74 (N.J. 2001)).

Defendants argue that prejudgment interest is not appropriate because they had a good-

faith dispute as to whether they owed plaintiff his unpaid wages and benefits from April 1, 2009,

to June 17, 2009, and his 2008 bonus. The New Jersey Supreme Court has held, however, that

"prejudgment interest on a claim, the amount of which is ascertained, is not avoided by honest

disputation over legal liability." Rova Farms, 323 A.2d at 506 (citing Kamens v. Fortugno, 262

A.2d 11, 15 (N.J. Super. Ct. Ch. Div. 1970)). Thus, plaintiff is entitled to prejudgment interest on

the unpaid wages and benefits he earned between April 1, 2009, and June 17, 2009. Further, if

16

the jury concludes that the 2008 bonus was guaranteed, plaintiff will also be entitled to prejudgment interest on that amount.

### E. Counterclaims Filed by AVAX

AVAX asserted counterclaims against plaintiff for breach of contract, detrimental reliance, and breach of fiduciary duty arising out of actions plaintiff took with respect to AVAX's French subsidiary, Genopoeitic.[4]  Plaintiff has moved for summary judgment on those counterclaims arguing, inter alia, that AVAX has failed to introduce evidence of non-speculative damages.[5] For the reasons stated below, the Court agrees with plaintiff and concludes that AVAX has failed to produce evidence of non-speculative damages resulting from those actions. Thus, the Court grants plaintiff's Second Motion for Summary Judgment as to all of AVAX's counterclaims.

Damages are an essential element of all three of AVAX's counterclaims. See Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007) (breach of contract); Tucci v. CP Kelco ApS, No. 02-1765, 2002 WL 31261054, at *6 (E.D. Pa. Oct. 10, 2002) (detrimental reliance); Feinberg v. Eckelmeyer, No. 2:09-1536, 2009 WL 4906376, at *10 (E.D. Pa. Dec. 16, 2009) (breach of fiduciary duty). "To recover lost profits, a plaintiff need only demonstrate that the damage was of a type that a reasonable man would realize to be a probable result of his breach." Corestar Intern. PTE, Ltd. v. LPB Commc'ns, Inc., No. 05-5850, 2007 WL 2990896, at

---

[4] The details of plaintiff's actions are not relevant to the instant motions.

[5] Plaintiff argues in the alternative that the AVAX counterclaim for detrimental reliance is improper because a written contract exists to govern the parties' relationship. In response, defendants argue that, if the Court finds that the detrimental-reliance counterclaim is improper given the existence of the Employment Agreement, the Court should also dismiss plaintiff's detrimental-reliance claim because of the existence of the Employment Agreement. Both parties are correct, as the Court explains infra, Section IV.G. Thus, both parties' claims for detrimental reliance fail.

*1 (D.N.J. Oct. 10, 2007). However, "[a] court cannot award speculative damages." Pioneer

Leimel Fabrics, Inc. v. Paul Rothman Indus., Ltd., No. 87-2581, 1992 WL 73012, at *12 (E.D.

Pa. Mar. 31, 1992); see also Farash & Robbins, Inc. v. Fleet Nat. Bank as Successor of Summit

Bank, No. 03-361, 2007 WL 1686702, at *4 (D.N.J. June 11, 2007).

AVAX's principal argument is that, by taking steps to end vaccine production at

Genopoeitic, plaintiff cut off AVAX's only revenue stream. The sole evidence AVAX offers to

prove damages stemming from plaintiff's actions is one page of a presentation plaintiff made to

the AVAX Board of Directors on April 14, 2009. (Defs.' Resp. Pl.'s Second Mot. Summ. J. Ex.

H.) The presentation outlines projected revenues for Genopoetic through 2015. However, there is

no explanation of how plaintiff calculated those projections, nor is there any evidence supporting

the projections. In fact, De Castro, a member of the AVAX Board of Directors and a defendant

in this case, stated during his deposition that he considered any revenue projections beyond one

year to be unreliable. (See Dep. Edson De Castro ("De Castro Dep."), Pl.'s Second Mot. Summ.

J. Ex. G, at 176 ("Q: [Y]ou wouldn't rely on [projections] beyond the year in which they were

provided, correct? A: Right.").) This single page of revenue projections, without more, is

insufficient to satisfy the requirement that AVAX prove non-speculative damages for all three of

their counterclaims.

AVAX makes three other arguments with respect to the damages issue, all of which the

Court rejects. First, AVAX argues that, by ending vaccine production at Genopoeitic, plaintiff

"forced the termination of [an] FDA clinical trial," making it "difficult, if not impossible, to

attract new capital." (Defs.' Resp. Pl.'s Second Mot. Summ. J. 12.) However, the only evidence

supporting this contention is a statement in one of defendants' expert reports that plaintiff's

"action would have a direct impact on [AVAX]'s open investigational new drug application with

18

the FDA." (Expert Opinion of Richard D. Newman, Defs.' Resp. Pl.'s Second Mot. Summ. J. Ex D, at 1.) There is no evidence of the actual effect, if any, of the ending of vaccine production at Genopoeitic on the FDA clinical trial.

Second, AVAX argues that plaintiff's actions jeopardized a financing agreement with Cancer Treatment Centers of America ("CTCA"). However, defendants have failed to allege or present any evidence that the AVAX relationship with CTCA was adversely affected. To the contrary, Prendergast stated in his deposition, "Ultimately [the vaccine manufacturing suspension] did not have an impact [on the relationship between AVAX and CTCA]." (Prendergast Dep., Pl.'s Second Mot. Summ. J. Ex. H, at 325–28; see also Schea Dep., Pl.'s Second Mot. Summ. J. Ex. I, at 521.)

Finally, AVAX argues that patients who were relying on their vaccines "would no longer receive their treatments." (Defs.' Resp. Pl.'s Second Mot. Summ. J. 12.) This argument is irrelevant to any damages that AVAX might have suffered.

For the above-stated reasons, the Court grants Plaintiff's Second Motion for Summary Judgment as to AVAX's counterclaims.

**F. Plaintiff's Claim for Severance**

In addition to seeking unpaid wages and benefits for April 1, 2009, to June 17, 2009, and his 2008 bonus, plaintiff also seeks severance payments under either paragraph 5.2(b) or paragraph 5.3 of the Employment Agreement. Defendants have moved for summary judgment on this issue, arguing that plaintiff was terminated for "Cause," and thus, he is not entitled to severance payments. Paragraph 5.2(b) provides that if AVAX terminated plaintiff without "Cause," he would be entitled to severance payments totaling twenty months' salary and benefits. Paragraph 5.3 entitled plaintiff to the same severance payments if he terminated his

employment for "Good Reason." However, paragraph 5.2(a) provides that if plaintiff terminated his employment without "Good Reason," he would not be entitled to severance payments. Similarly, paragraph 5.2(c) states that plaintiff would not be entitled to severance payments if AVAX terminated plaintiff's employment for "Cause." Thus, there are two issues with respect to plaintiff's claim for severance: (1) Who terminated plaintiff's employment, AVAX or plaintiff? and (2) Was plaintiff's employment terminated for "Cause" (if by AVAX) or "Good Reason" (if by plaintiff)?

As for the first question, AVAX terminated plaintiff's employment in its June 16, 2009, letter. Plaintiff's May 14, 2009, letter to AVAX simply notified AVAX that plaintiff believed AVAX was in breach of the Employment Agreement. Thus, pursuant to paragraph 6.5 of the Employment Agreement, AVAX had thirty days to cure such breach, at which point, paragraph 4.4 entitled plaintiff to terminate his employment. Plaintiff never notified AVAX that he intended to terminate his employment. Thus, AVAX's June 16, 2009, letter to plaintiff terminated plaintiff's employment, effective June 17, 2009.

However, genuine disputes of material fact exist as to whether AVAX's termination of plaintiff was for "Cause." The June 16, 2009, letter outlined seven examples of conduct that AVAX contends constituted "Cause" for terminating plaintiff. Both parties have produced evidence by which they attempt to explain the context of plaintiff's conduct. (Compare Expert Reports, Defs.' Resp. Pl.'s Second Mot. Summ. J. Exs. C–E, with Expert Report, Pl.'s Resp. Defs.' Mot. Summ. J. Ex. D.) Thus, a jury is required to determine whether AVAX had "Cause" to terminate plaintiff, and the Court denies defendants' Motion for Summary Judgment.

### G. Plaintiff's Detrimental-Reliance and Unjust-Enrichment Claims

In his Amended Complaint, plaintiff asserted claims for unjust enrichment and detrimental reliance. AVAX has asserted a counterclaim for detrimental reliance. Plaintiff argues in his Second Motion for Summary Judgment that the AVAX counterclaim for detrimental reliance fails because a written contract governs the parties' relationship. In their response to that motion, defendants argue that, if the Court finds that the detrimental-reliance counterclaim is improper given the existence of the Employment Agreement, the Court should also dismiss plaintiff's detrimental-reliance claim because of the existence of the Employment Agreement. Both parties are correct. "Pennsylvania does not recognize a cause of action for detrimental reliance in the context of an at-will employment relationship." Preobrazhenskaya v. Mercy Hall Infirmary, 71 F. App'x 936, 940 (3d Cir. 2003); see also Carlson v. Arnot-Ogden Mem'l. Hosp., 918 F.2d 411, 416 (3d Cir. 1990). Further, although defendants do not explicitly argue that plaintiff's unjust-enrichment claim should be dismissed, "[i]t has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006); see also Constar, Inc. v. Nat'l Distrib. Ctrs., Inc., 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000).

In this case, the parties' relationship was "founded upon" the written Employment Agreement. Wilson Area Sch. Dist., 895 A.2d at 1254. Accordingly, the Court dismisses plaintiff's detrimental-reliance and unjust-enrichment claims.[6]

---

[6] Because the Court granted plaintiff's Second Motion for Summary Judgment as to all of the AVAX counterclaims on other grounds—a lack of evidence of non-speculative damages—the AVAX counterclaim for detrimental reliance is no longer in the case. However, the AVAX detrimental-reliance counterclaim would also fail for the reasons described in this section.

**V. CONCLUSION**

For the above-stated reasons, the Court grants plaintiff's First Motion for Summary Judgment as to plaintiff's entitlement to unpaid wages and benefits and prejudgment interest against AVAX and the individual defendants. The Court denies plaintiff's First Motion for Summary Judgment as to plaintiff's claim for his 2008 bonus. The Court grants plaintiff's Second Motion for Summary Judgment as to all of the AVAX counterclaims. The Court denies Defendants' Motion for Summary Judgment as to the issues of the NJWPL's application, the 2008 bonus, and severance payments. Finally, the Court dismisses plaintiff's detrimental-reliance and unjust-enrichment claims.

The following claims remain to be decided by the jury: (1) the amount of plaintiff's unpaid wages and benefits for the period between April 1, 2009, and June 17, 2009; (2) whether the 2008 bonus was guaranteed, and if so, the amount of the bonus; and (3) whether plaintiff is entitled to severance because AVAX terminated him without "Cause," and if so, the amount of severance.

An appropriate Order follows.